**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Elizabeth A. M.,                                      Civ. No. 19-3073 (WMW/BRT)

        Plaintiff,

v.                                               **REPORT AND RECOMMENDATION**

Andrew M. Saul,
Commissioner of Social Security,

        Defendant.

James H. Greeman, Esq., Greeman Toomey, counsel for Plaintiff.

Kizuwanda Curtis, Esq., Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

     Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. This matter is before the Court on the parties' cross-motions for summary judgment, brought in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 12, 14.) The matter is referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. L.R. 7.2, 72.1. For the reasons stated below, this Court recommends that Plaintiff's motion be granted in part, and Defendant's motion be denied.

## BACKGROUND

### I. Procedural and Factual Background

Plaintiff is a 36-year-old woman who has been diagnosed with multiple physical and mental impairments.[1] Her physical limitations are not at issue in this appeal.[2] Instead, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in evaluating the medical opinion evidence and in determining Plaintiff's mental residual functional capacity ("RFC"). In particular, Plaintiff's primary argument is that the ALJ should have given more weight to her treating physician's statement that Plaintiff would be "moderately to markedly" limited in her ability to respond to work pressures in a usual work setting and to changes in a routine work setting.

Plaintiff is a high-school graduate, finished two years in college, and received a diploma from Long Technical College for medical assisting. (Tr. 45–47.)[3] Plaintiff has

---

[1]     Plaintiff has been diagnosed with severe major depressive disorder, borderline personality disorder, post-traumatic stress disorder, bipolar disorder NOS, adjustment disorder with disturbance of mood, mild mid-lumbar scoliosis, lumbar degenerative disc disease with chronic left lumbar radiculopathy, cervical spine multilevel stenosis and spondylosis, right lower extremity sensorimotor peripheral polyneuropathy, mild obstructive sleep apnea, diabetes mellitus, type 2, mild right upper extremity carpal tunnel syndrome, and astigmatism with adaption deficit. (Tr. 404, 440, 523, 807, 1075, 1147, 1371–72, 2431, 2436, 2449, 2385.)

[2]     In Plaintiff's memorandum, she references that the ALJ gave only partial weight to Nurse Megan Scheuing's opinion regarding certain physical restrictions and argues that this finding is "internally inconsistent" with the ALJ's giving great weight to Nurse Sally Pollack's opinion supporting Plaintiff's psychiatrist's opinion that Plaintiff could perform any employment. (Doc. No. 13, Mem. in Supp. of Pl.'s Mot for Summ. J. ("Pl.'s Mem.") 16–17.) Plaintiff, however, does not argue that any physical limitations provided for in the determined RFC were erroneous.

[3]     Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 10.)

past relevant work as a Head Start aide in an elementary school helping teachers with three to five-year-old children; a teacher's aide helping students with fluency in reading; and a nanny to a child with Down syndrome. (Tr. 49–52.) At the time of the hearing before the ALJ, Plaintiff worked four to sixteen hours a week at Hy-Vee as a cashier. (Tr. 47–48.) She obtained that job through the help of Winona ORC Industries, which provides assistance in obtaining employment, on-the-job intervention in case of any conflicts or issues, and a job coach. (Tr. 47–49.)

From April 2015 through August 2018, Plaintiff lived on her own in an apartment. (Tr. 42.) Due to her mental health symptoms, however, Plaintiff was hospitalized at least four times between 2015 and 2017, and was seen for treatment and therapy many times during that timeframe. (*See, e.g.*, Tr. 514–37, 621–32, 871–92, 1095–1116.) Early in 2018, Plaintiff terminated her parental rights for her daughter, which caused stress and depression that led to a mental deterioration such that she could not live independently. (Tr. 43.) In late August 2018, Plaintiff moved into an adult foster care home with three other individuals where there is staff present most of the time. (Tr. 42.) Plaintiff testified that another reason why she moved out of her apartment and into the group home was because she took a serious fall and landed on her head in August 2018, and she needed to be watched in case of another fall. (Tr. 70.) At the group home, Plaintiff maintains some independence and does some chores, but the staff helps her with some basic living skills some of the time. (Tr. 42.) Plaintiff has a driver's license and she does drive. (Tr. 42.) Plaintiff affirmed at the hearing that she was receiving a Community Access to Disability

3

Inclusion Waiver, services from Independent Living Skills and Adult Rehabilitative Health Services, and services from a mental health case manager. (Tr. 70, 72.)

Plaintiff filed her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act on June 6, 2016, when she was living independently in her apartment but after two of her hospitalizations. (Tr. 114–15.) Plaintiff's application was denied on October 10, 2016, and denied again on December 21, 2016. (Tr. 146.) Plaintiff filed a written request for a hearing on January 25, 2017. (Tr. 168–70.) The hearing took place before an ALJ on November 19, 2018. (Tr. 38.) The ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act. (Tr. 15–32.) Plaintiff filed a request for review of the hearing decision on February 12, 2019. (Tr. 220–21.) Plaintiff's request for review was denied on October 21, 2019, and the ALJ's denial of benefits became the final decision of the Commissioner. (Tr. 1–3.) On December 12, 2019, Plaintiff filed an appeal of the Commissioner's decision with this Court. (Doc. No. 1, Compl.)

## II.     The ALJ's Findings and Decision

The ALJ used the five-step evaluation process for determining whether an individual is disabled.[4] At step one the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 30, 2016, and at step two the ALJ found that

---

[4]     *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.").

4

Plaintiff has the following severe impairments: lumbar and cervical degenerative disc disease; diabetes mellitus, Type II; obstructive sleep apnea; obesity; depressive disorder; personality disorder; and post-traumatic stress disorder ("PTSD"). (Tr. 17–18.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ found the record does not establish the requirements to meet or equal the criteria of any listed impairments and no acceptable medical source designated to make equivalency findings has concluded Plaintiff's impairment(s) medically equal a listed impairment. (Tr. 18.) The ALJ also specifically found that Plaintiff's mental impairments do not the meet the criteria of Listings 12.04, 12.08, and 12.15. (*Id.*)

Before the ALJ moved to step four, he considered Plaintiff's residual functional capacity ("RFC"). (Tr. 17.) An individual's residual functional capacity is the most she can do despite her limitations. 20 CFR 404.1545(a)(1). The ALJ weighed the opinions and statements from various medical providers and consultants of record and ultimately found that Plaintiff has the RFC to perform sedentary work with various mental and physical limitations.[5] (Tr. 20–24.) He then found at step four that Plaintiff, considering

---

5   Specifically, the ALJ determined that Plaintiff –

  has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except frequent foot controls; occasional climbing of ramps and stairs, no climbing of ropes, ladders and scaffolds; occasional balance, stoop, kneel, crouch, crawl; frequent right handling and fingering; no exposure to hazards such as unprotected heights, moving mechanical parts, or operating a motor vehicle; frequent exposure

her RFC, is unable to perform any past relevant work. (Tr. 24.) At step five, the ALJ found, however, that based on Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform.[6] (Tr. 25.) Therefore, the ALJ found Plaintiff not disabled. (Tr. 26.)

## DISCUSSION

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The Social Security Administration must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.

---

to atmospheric conditions such as dust, odors, fumes and pulmonary irritants; interacting with supervisors, coworkers, and the public if the work is goal oriented, but not at a fast-paced or production rate pace, and the worker functions in relating to people are limited to speaking-signaling, serving or taking instruction-helping as defined in Appendix B of the Dictionary of Occupational Titles (DOT); changes in routine setting are explained in advance.

(Tr. 20.)

[6] These jobs included "document specialist," "charge account clerk," and "food and beverage order clerk." (Tr. 25.)

§ 423(d)(2)(A). The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard "allows for the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding that substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal).

7

## II. Analysis

Plaintiff argues "[t]he ALJ erred in evaluating the medical opinion evidence and in determining [Plaintiff's] mental RFC"; because of that error, Plaintiff argues there is not substantial evidence to support the ALJ's decision. (Pl.'s Mem. 11.) Specifically, Plaintiff argues the ALJ gave improper weight to Plaintiff's treating physician, Briana Lester, M.D. (*Id.* at 11–15.)

In a mental medical source statement dated September 26, 2018, Dr. Lester stated that Plaintiff (1) was not limited in her ability to understand, remember and carry out simple instructions and understand and remember detailed instructions; (2) was moderately limited in her ability to carry out detailed instructions and moderately limited in her ability to make judgments on simple work-related decisions; (3) was not limited in her ability to interact appropriately with the public, supervisors and coworkers; and (4) was moderately to markedly limited in her ability to respond appropriately to work pressure and to changes in a routine work setting. (Tr. 2302–04.) The ALJ gave partial weight to opinions #1 and #2 above because they were generally consistent with the evidence in the record. (Tr. 23.) The ALJ disagreed with opinion #3 above, which stated Plaintiff had no limitation, and found that the overall evidence indicated that Plaintiff was moderately limited in those areas. (*Id.*) And regarding opinion #4 above, the ALJ found the evidence indicated that Plaintiff was only moderately limited, rather than moderately to markedly limited.[7] (*Id.*) In her appeal memorandum to this Court, Plaintiff only takes

---

[7]     A moderate limitation means functioning in this area is independently, appropriately, effectively, and on a sustained basis, fair. 20 C.F.R. § Pt. 404, Subpt. P,

issue with the ALJ's findings with respect to Dr. Lester's opinion #4. (Pl.'s Mem. 11–12.)

In determining weight of medical opinions, the ALJ should consider several factors such as the nature and extent of the treatment relationship; degree to which relevant evidence supports the physician's opinion; consistency between the opinion and the record as a whole; whether the physician is a specialist in the area in which the opinion is based; and other factors which support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), (f), 416.927(c), (f). The Social Security Administration regulations generally give treating physicians' opinions greater weight than non-treating sources. 20 C.F.R. § 404.1527(c)(2); *see Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018). Treating physicians' opinions "receive controlling weight if they are well-supported by the medical evidence and are 'not inconsistent with the other substantial evidence in [the] case record.'" *Walker*, 911 F.3d at 553 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Regardless of the weight an ALJ assigns an opinion, they "must give good reasons for doing so." *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996) (stating that notice of denial "must contain specific reasons for the weight given to the treating source's medical opinion"). "Good reasons" for lesser weight include internal inconsistency and other physicians' opinions offering better medical evidentiary support. *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

---

App. 1. A marked limitation means that the symptoms interfere seriously with the ability to function independently, appropriately, and effectively. *Id.*

9

Plaintiff argues that the more stringent restriction of moderate to marked for responding appropriately to work pressure and to changes in a routine work setting is supported by (1) Plaintiff's reports that she has a pattern of becoming overwhelmed emotionally when stressed even when engaged in therapy and medication compliant; (2) the State Medical Review Team's opinion that Plaintiff would be unable to sustain adequate concentration, persistence, and pace to successfully complete a 40-hour work week; (3) Plaintiff's medical history showing a pattern of mental decompensation with stress or change without support structures and services; (4) Nurse Meagan Scheuing's December 6, 2017 statement that Plaintiff should work no more than 20 hours per week in shifts of no greater than 4 hours; (5) the employment and other services required for Plaintiff to maintain her level of functioning; and (6) Plaintiff's inability to parent her child on a full-time basis. (Pl.'s Mem. 12–14.) In the ALJ's decision, the only reason the ALJ stated as to why he gave less weight to Dr. Lester's opinion #4 (i.e., that Plaintiff was moderately to markedly limited with responding appropriately to work pressure and to changes in a routine work setting), was a conclusory statement that "the evidence indicates that the claimant is only moderately limited in these areas." (Tr. 23.) The ALJ did not cite to any record evidence in support of her statement, but instead only cited to Dr. Lester's opinion itself.[8] (*See id.* (citing Exhibit 23F).)

---

[8]     This Court also notes that in a prior section of the ALJ's decision, when analyzing whether the "paragraph B" criteria were met under the Listings, the ALJ referenced Dr. Lester's opinion that Plaintiff has "moderate to marked limitations in her ability to respond appropriately to work pressures and in her ability to respond appropriately to changes in a routine work setting," and that Plaintiff "seems to do best with external structure and guidance." (Tr. 19.) Rather than question the "moderate to marked" opinion

10

The regulations require that the ALJ must give good reasons for rejecting an opinion from a treating source. *See* 20 C.F.R. § 404.1527(c)(2). This Court finds that the ALJ's reason for giving less weight to Dr. Lester's opinion #4 above was conclusory. Moreover, Dr. Lester is a treating physician, and the ALJ's reasoning neither pointed to internal inconsistency in Dr. Lester's notes nor to other physicians' opinions offering better medical evidentiary support for a "moderate" limitation rather than a "moderate to marked" limitation. This is required for the ALJ to give a treating physicians' opinion less weight. For this reason, this Court recommends remanding this case for the ALJ to consider Dr. Lester's opinion and to give good reasons for the weight accorded to each opinion from this treating source.[9] *See, e.g.*, *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand."). The ALJ should then reconsider the RFC determination and conclusions at steps four and five.[10]

---

at that juncture, the ALJ instead referenced other evidence in the record, including that Plaintiff lives in a supportive group setting (an adult foster home), and she has a history of suicidal ideation. (*Id.*) The ALJ did not explain why the "moderate to marked" limitation would not apply.

[9] In this appeal, Plaintiff only directly challenged the ALJ's decision with respect to Dr. Lester's opinion #4; however, on remand, the ALJ should not be limited to addressing only opinion #4, but should consider all aspects of Dr. Lester's opinion and should, in any area where controlling weight is not given, give good reasons for why controlling weight is not given.

[10] Because this Court concludes that remand is required to consider Dr. Lester's opinions, the ALJ will be allowed to consider all evidence in the record to determine whether Dr. Lester's opinions are consistent or inconsistent with other medical records and opinions. Therefore, this Court refrains from addressing Plaintiff's arguments

11

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) be **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 14) be **DENIED**; and

3. This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Report and Recommendation.

4. Judgment be entered accordingly.

Date: December 14, 2020                       __s/ Becky R. Thorson_____
                                              BECKY R. THORSON
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

regarding other evidence in the record at this time, which includes the statements made by Plaintiff in her memorandum regarding Nurse Schueing and Nurse Pollock's opinions.